IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 85302-3-I |
| LAUREL OTIS, | DIVISION ONE |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| BRANDON OTIS, | |
| Appellant. | |

SMITH, C.J. — Brandon and Laurel Otis[1] married in August 2009 and separated in September 2019. Brandon appeals the court's final orders following the dissolution trial, asserting that the trial court abused its discretion in granting Laurel a share of his separate retirement assets and mandating that he name Laurel the sole beneficiary of his pension and that insufficient evidence exists to support the court's finding that Laurel was entitled to a judgment for money owed for her share of their tax refunds. He also raised the doctrine of equitable estoppel, arguing that it precludes Laurel from challenging the division of Brandon's separate retirement accounts. We affirm the trial court's distribution of separate assets and the judgment regarding the tax refund and decline to apply the doctrine of equitable estoppel, but we remand for the trial court to revise the

---

[1] Because the parties share a last name, we refer to each by their first name solely for clarity.

final order and remove the beneficiary requirement. We also grant Laurel reasonable attorney fees and costs subject to compliance with RAP 18.1(d).

## FACTS

### Background

Brandon and Laurel Otis married in August 2009 and separated in September 2019. Laurel petitioned for legal separation in March 2021, which became a petition for dissolution by agreement of both parties in late 2022. The parties have two children together.

Following the separation, Brandon left the shared home and moved in with his parents. Under a temporary order entered in June 2021, Brandon paid Laurel $3,500 a month in undifferentiated support. Because Laurel remained in the family home, she was responsible for the mortgage and any other household expenses.

### Trial

Trial on the dissolution began in November 2022 and centered heavily on distribution of the parties' assets. Although Brandon and Laurel had a prenuptial agreement, the court found it unenforceable because Brandon failed to disclose all of his assets and because Laurel did not have an attorney review the document. Accordingly, the court performed its own analysis of each party's assets and earning capacity.

The court determined that Laurel had a lower earning capacity than Brandon. Laurel had worked as a flight attendant for a number of years during the marriage, became a stay-at-home parent once the children were born, and

was working as a courier for Amazon at the time of trial. Although she struggled to find full-time employment, Laurel had a retirement account worth $85,000 by the time of trial.

In contrast, Brandon worked the entirety of the marriage as an electrician. He had a consistent income and belonged to a local union, which provided him with a pension and retirement account. Both the pension and retirement account began accruing before Brandon and Laurel married.

Distribution of shared assets was generally undisputed. The parties agreed to sell their home in Everett and split the profits evenly between them. The parties also obtained four tax refunds from 2017 to 2020, totaling just over $44,000. They agreed, pursuant to a Civil Rule (CR) 2A agreement, to split their tax refunds evenly and deposited them into an account which they both could access. The parties further agreed that Laurel would receive her retirement account in full.

The parties disputed the distribution of Brandon's separate property. Brandon asked to retain as separate property the contributions he made to his pension and retirement accounts before marriage and after separation. Laurel asked the court to divide the assets as of the date of the dissolution, rather than the separation, and argued that it would be inequitable to award Brandon his premarital retirement assets. Laurel's proposed division granted her 100 percent of her own retirement and financial accounts, 50 percent of all community assets, and 50 percent of Brandon's separate assets. She noted Brandon's ability to

amass retirement assets and income during the separation period while she struggled to find full-time employment with her childcare responsibilities.

The court adopted Laurel's proposed division of assets but set the end date for division as of the time of separation. The court also awarded Laurel $20,000 in attorney fees. The court did not enter a final written order adopting Laurel's proposed order until March 2023.

Motions for Reconsideration and Clarification

After the court entered final orders, Brandon moved for reconsideration, asking the court to reassess the property distribution and asserting that the order failed to distinguish community property from separate property. He also challenged the court's requirement that he name Laurel as his sole pension beneficiary.

Similarly, Laurel moved for clarification of the court's final orders. She identified clerical errors and asked the court not to consider Brandon's arguments that it had already dismissed. The court considered both motions,[2] granted Laurel's motion in part to clarify the tax refund award, and entered new final orders. The court did not grant Brandon's requested changes.

Brandon appeals.

---

[2] Laurel filed a motion requesting that this court take judicial notice of the superior court's docket indicating that the trial court considered both Brandon and Laurel's motions for reconsideration and clarification. Given that the trial court's docket is a source whose accuracy cannot reasonably be questioned, as required by ER 201(b), we take judicial notice of the superior court docket.

ANALYSIS

Standard of Review

We review a trial court's distribution of property for abuse of discretion. In re Marriage of Groves, 10 Wn. App. 2d 249, 254, 447 P.3d 643 (2019). A court abuses its discretion if the property distribution is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Wright, 179 Wn. App. 257, 261-62, 319 P.3d 45 (2013). A trial court has broad discretion in dissolution proceedings to divide property in an equitable fashion. Groves, 10 Wn. App. 2d at 254-55.

Premarital Retirement Assets

Brandon argues that the trial court abused its discretion in granting Laurel half of his retirement assets accrued before marriage, stating that the court's final order was impermissibly vague. Laurel asserts that the trial court's award was neither vague nor accidental and that the distribution was a reasonable exercise of the court's discretion. The court did not abuse its discretion in granting Laurel half of Brandon's separate property.

The court has broad discretion to make a just and equitable distribution of property. RCW 26.09.080. Such a distribution requires the analysis of all relevant factors, including "(1) [t]he nature and extent of the community property; (2) [t]he nature and extent of the separate property; (3) [t]he duration of the marriage . . .; and (4) [t]he economic circumstances of each spouse . . . at the time the division of property is to become effective." RCW 26.09.080. The court may distribute all property, whether it is categorized as community or separate.

5

Wright, 179 Wn. App. at 261. " '[A] court need not find exceptional circumstances to justify awarding a portion of one spouse's [separate] property to the other spouse.' " In re Marriage of Larson, 178 Wn. App. 133, 141, 313 P.3d 1228 (2013) (second alteration in original) (quoting In re Marriage of Griswold, 112 Wn. App. 333, 347-78, 48 P.3d 1018 (2002)). Further, it is fair and equitable to award a share of separate property to a spouse with a lesser earning capacity. Larson at 178 Wn. App. at 142.

Here, as shown in the final child support order, the court documented that Laurel had a lower earning capacity than Brandon. The court considered that Laurel did not have a consistent income at the time of trial, the parties' community and separate property, and the economic circumstances of each spouse at separation. The court then imputed Laurel's income at full-time minimum wage. RCW 26.19.071(6) provides that a court should impute income if a parent is voluntarily unemployed or underemployed. The imputed income is then the amount the court finds a party could or should be earning, not the party's actual earnings. But even if Laurel were to actually meet her imputed income, full-time minimum wage is still significantly lower than Brandon's yearly income of approximately $115,000. Given this difference in earning capacity, and the fact that it is fair and equitable to award separate property to a spouse with a lower earning capacity, the court did not abuse its discretion by awarding Laurel a share of Brandon's premarital retirement assets.

Brandon also contends that the court abused its discretion in granting Laurel half of his premarital retirement assets because the order was

6

impermissibly vague, making it "impossible" to tell whether the trial court meant to award separate rather than community property. He notes that the court entered the final order months after trial and failed to adequately characterize any of the property. Although the court did not characterize any assets as separate or community property in its final order, there is no evidence in the record that the court was unaware of the character of the property, or that the parties disputed the characterization of the property. Because the court adopted Laurel's proposal, it follows that the court also adopted her characterization.

In her proposed order, Laurel requested an award of half of Brandon's separate property. The court adopted Laurel's proposed division but limited the award of separate property to Brandon's property acquired before separation rather than dissolution. This limitation indicates that the court fully considered the grant of Brandon's separate property and intentionally did not limit the award to postmarital assets. The language in the award is not vague. In fact, in his motion for reconsideration, Brandon argues that the trial court's award "will result in [Laurel] receiving a portion of [the] separate property, earned prior to the marriage." It is clear that even Brandon understood the court's aim. And he cannot now claim that the language of the award is not clear enough to determine whether the court intended to award his separate property to Laurel.

The court did not abuse its discretion in granting Laurel half of Brandon's separate retirement assets.

Retirement and Pension Beneficiary Mandate

Brandon contends that the trial court abused its discretion in mandating that he name Laurel the sole beneficiary of his retirement accounts because the order grants Laurel rights in his future assets and the order is contrary to public policy. Laurel asserts that the mandate was proper and reasonable in light of Brandon's ongoing child support obligations. The trial court abused its discretion because the order both awarded Laurel future assets and is contrary to public policy.

Retirement income is divisible at dissolution, but only "[t]hat portion of the retirement income earned during the existence of the community." Arnold v. Dep't of Ret. Sys., 128 Wn.2d 765, 778, 912 P.2d 463 (1996). Future assets, such as retirement income earned after the end of the marriage, are not properly before a dissolution court and should not ordinarily be divided between spouses. In re Marriage of Anglin, 52 Wn. App. 317, 320, 759 P.2d 1224 (1988). "[W]hen a spouse continues to accumulate pension benefits following divorce, case law does not support the . . . approach of simply dividing the total pension in half." In re Marriage of Chavez, 80 Wn. App. 432, 436, 909 P.2d 314 (1996).

Additionally, public policy encourages future marriages and discourages handling dissolutions in a way that "would place unwarranted stress upon a second marriage." Van Dyke v. Thompson, 95 Wn.2d 726, 732, 630 P.2d 420 (1981). Instead, public policy aims to "disentangl[e] the divorcing spouses," allowing them to move forward unencumbered. In re Marriage of Bulicek, 59 Wn. App. 630, 634, 800 P.2d 394 (1990).

In requiring that Brandon make Laurel the sole death beneficiary of his retirement accounts and pension, the trial court placed no limitation on this condition such that Laurel would remain Brandon's sole beneficiary for the rest of his life, assuming that he predeceases her. As a result, this order not only awards Laurel Brandon's future assets but also prevents him from naming his children or a new spouse as his beneficiary. Brandon, who was 41 years old at the time of separation, is likely to contribute to his pension and retirement accounts for another two decades. Laurel cites no authority to support her assertion that she should be the sole beneficiary for the indefinite future. Moreover, the requirement that Laurel be the sole beneficiary is contrary to public policy. The trial court abused its discretion in awarding Laurel decades of future assets beyond the end of the marriage.

Laurel's assertion that the requirement is reasonable in light of Brandon's ongoing child support obligations is unpersuasive. Laurel asserts that Brandon's right to change beneficiaries is overridden by the equities in favor of his children, to whom he owes continued support; but in support of this assertion, Laurel relies on case law discussing life insurance policies. Because life insurance policies and retirement assets are vastly different, this situation is distinguishable. In addition, Brandon will only owe child support for the next twelve years. Requiring that Laurel be the sole beneficiary for the remainder of Brandon's life is not proportionate to his child support obligation. We remand for the trial court to revise the final order and strike the beneficiary requirement.

9

Tax Refund Share

Brandon asserts that the trial court's finding that Laurel is entitled to a further portion of their shared tax refund is not supported by substantial evidence. We disagree.

We review a trial court's findings of fact for substantial evidence. Wright, 179 Wn. App. at 262. Evidence is substantial if it is sufficient to persuade a rational person of the asserted premise. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). "A reviewing court may not disturb findings of fact supported by substantial evidence even if there is conflicting evidence." Merriman, 168 Wn.2d at 631. We do not reweigh evidence or determine the credibility of witnesses. In re Dependency of A.M.F., 23 Wn. App. 2d 135, 141, 514 P.3d 755 (2022), aff'd, 1 Wn.3d 407 (2023). Rather, the question is " 'whether the evidence most favorable to the prevailing part supports [the] challenged findings.' " Structurals Nw., Ltd. v. Fifth & Park Place, Inc., 33 Wn. App. 710, 716, 658 P.2d 679 (1983) (quoting N. Pac. Plywood, Inc. v. Access Road Builders, Inc., 29 Wn. App. 228, 232, 628 P.2d 482 (1981)). Unchallenged findings of fact are considered verities on appeal. In re Marriage of Fiorito, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

As previously noted, Brandon and Laurel received four tax refunds from 2017 to 2020, totaling just over $44,000. They agreed to split the funds evenly. Brandon now asserts that Laurel has already spent the majority of her half and therefore is not entitled to the $10,442.85 judgment that the court awarded.

It is undisputed in the record that Laurel withdrew $11,760.81 of the tax refund money to pay attorney fees. Both parties documented this withdrawal and its subsequent use, providing substantial evidence to support the finding. But Brandon contends that Laurel withdrew an additional $11,700 of the tax refund. The trial court did not err in determining that substantial evidence only supported the initial withdrawal for attorney fees.

On appeal, Brandon contends that Laurel spent a total of $18,906 on attorney fees, three missed mortgage payments, and other personal expenses. He also states that she transferred $4,554.53 to her own account, without any explanation. This would indicate that Laurel had already spent more than her half of the tax refunds. But at trial, Brandon asserted that she only spent $16,160 between the fees and two mortgage payments. And he relied on incomplete exhibits to support his claim. The exhibits either excluded relevant time periods or missed the pages of the statement listing the actual transactions. He conceded on cross-examination that his exhibits were insufficient to prove his point. Because Brandon fails to provide substantial evidence to establish that Laurel spent an additional $11,700 in mortgage payments and personal expenses, the only fact in the record supported by substantial evidence is Laurel's withdrawal for attorney fees.

The trial court did not abuse its discretion in awarding Laurel the remainder of her share of the tax refund.

Equitable Estoppel

Brandon asserts that the doctrine of equitable estoppel precludes Laurel from challenging the division of Brandon's separate retirement accounts in her response. Laurel contends that equitable estoppel does not apply because Brandon fails to establish all required elements. Because Brandon cannot establish any of the required elements of equitable estoppel, the doctrine does not apply.

The doctrine of equitable estoppel applies when "one party has made a statement, admission, or act that has been justifiably relied on to the detriment of another party." In re Marriage of Tupper, 15 Wn. App. 2d 796, 812, 478 P.3d 1132 (2020). To establish equitable estoppel, a party must show: "(1) an admission, act or statement inconsistent with a later claim; (2) another party's reasonable reliance on the admission, act or statement; and (3) a resulting injury to the relying party if the party making the admission, act, or statement is permitted to contradict or repudiate the earlier admission, act, or statement." Tupper, 15 Wn. App. 2d at 812.

1. Inconsistent Statement

Brandon argues that Laurel's alleged agreement at trial to split only the community portions of his retirement accounts is inconsistent with the final order, which includes his separate retirement property. He fails to identify, however, where Laurel actually agreed to the division of only community property. In briefing, Brandon simply states that he relied on "Laurel's agreement that only community portions of his retirement accounts would be split via [qualified

domestic relation orders]." At oral argument, Brandon asserted that Laurel's response that both parties were on "the same page" establishes that Laurel agreed to split only community property. But it is unclear from the record what the parties were actually on "the same page" about. Brandon's interpretation of that statement is not enough to establish that Laurel initially agreed to divide only community property. In fact, Laurel's trial brief shows that she asked for the opposite, requesting 50 percent of Brandon's separate assets. It is unlikely that Laurel would have agreed to something different without any further discussion. Without evidence of an inconsistent statement, Brandon fails to meet the first element.

### 2. Reasonable Reliance

Brandon next contends that in allowing the court to draft the final orders rather than submitting proposed orders himself, he relied on Laurel's alleged agreement to split only the community portions of his retirement accounts. But both Brandon and Laurel were clear at trial: they agreed that the court should draft the final order because neither trusted the other to make the appropriate changes to the document. Because Brandon cannot establish that he reasonably relied on Laurel's alleged statement, Brandon fails to meet the second element.

### 3. Resulting Injury

Finally, Brandon asserts that, as a result of his reliance, he suffered injuries in the form of having to move for clarification and now this appeal. But Brandon has not established an inconsistent statement or any reasonable

reliance. And because the court drafted the final order, and declined to grant Brandon's motion for reconsideration, any variation from what Brandon assumed the final order to be cannot be attributed to Laurel. Because Brandon does not indicate any other form of injury, he fails to meet the third element.

Nothing precludes Laurel from challenging Brandon's account of the division of his separate property.

## Attorney Fees

Lastly, Laurel requests attorney fees under RCW 26.09.140, which permits the grant of fees, after consideration of the financial resources of both parties, based on financial need. Because Laurel establishes her need and we determine that Brandon has the ability to pay, we award Laurel reasonable attorney fees and costs pursuant to RAP 18.1, subject to compliance with RAP 18.1(d).

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. RCW 26.09.140 provides that after considering the financial resources of both parties, "upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." "A party relying on RCW 26.09.140 'must make a showing of need and of the other's ability to pay fees in order to prevail.' " In re Marriage of Gharst, 25 Wn. App. 2d 752, 761, 525 P.3d 250 (2023) (quoting In re Marriage of Kirschenbaum, 84 Wn. App. 798, 808, 929 P.2d 1204 (1997)). The statute does not specify that the party requesting fees must prevail. RCW 26.09.140.

Laurel asserts that because the trial court determined that she has the financial need and that Brandon has the ability to pay, she is entitled to fees on appeal. According to her RAP 18.1(c) financial declaration, Laurel works a strictly commission-based job and her total monthly expenses exceed her income. Brandon's financial declaration, in contrast, displays a monthly income well-over double Laurel's income. Given this, and despite the fact that we are reversing in part, we award Laurel reasonable attorney fees and costs pursuant to RAP 18.1, subject to compliance with RAP 18.1(d).

We affirm the trial court's distribution of separate assets and remaining share of the tax income but remand for the trial court to revise the final order and strike the beneficiary requirement. We also grant Laurel reasonable attorney fees and costs subject to compliance with RAP 18.1(d).

Smith, C.J.

WE CONCUR:

Díaz, J.

Birk, J.